

**FILED**

*11:09 am, 10/23/24*

**Margaret Botkins
Clerk of Court**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

---

WESTERN ENERGY ALLIANCE,
INDEPENDENT PETROLEUM
ASSOCIATION OF NEW MEXICO
NEW MEXICO OIL & GAS
ASSOCIATION, NORTH DAKOTA
PETROLEUM COUNCIL,
PETROLEUM ASSOCIATION OF
WYOMING, and UTAH PETROLEUM
ASSOCIATION,

    Petitioners,

  vs.

DEB HAALAND, in her official capacity
as Secretary of the Interior, and UNITED
STATES BUREAU OF  LAND
MANAGEMENT,

    Federal Respondents,

CENTER FOR BIOLOGICAL
DIVERSITY, CITIZENS FOR A
HEALTHY COMMUNITY, FRIENDS
OF THE EARTH, MONTANA
ENVIRONMENTAL INFORMATION
CENTER, PRAIRIE HILLS AUDUBON
SOCIETY, SIERRA CLUB, and
WESTERN ORGANIZATION OF
RESOURCE COUNCILS,

    Intervenor-Respondents.

Case No. 2:24-CV-00100-KHR

---

## ORDER GRANTING *MOTION TO INTERVENE*

   This matter is before the Court on Center for Biological Diversity, Citizens for a

Healthy Community, Friends of the Earth, Montana Environmental Information Center,

Prairie Hills Audubon Society, Sierra Club, and Western Organization of Resource Councils' (collectively "Conservation Groups") *Motion to Intervene* ("*Motion*") (ECF No. 31). Petitioners and Federal Respondents take no position on this *Motion*. ECF No. 31 at 5; ECF No. 33 at 1–2. After reviewing the *Motion*, the record, the applicable law, and being otherwise fully advised, the *Motion* shall be **GRANTED**.

BACKGROUND

This action concerns the Bureau of Land Management's ("BLM" or "Federal Respondents") final rule on Fluid Mineral Leases and Leasing Process (the "Rule"). 89 Fed. Reg. 30916 (Apr. 23, 2024). The Rule, *inter alia*, "implements provisions of the Inflation Reduction Act (IRA) pertaining to royalty rates, rentals, and minimum bids; updates the bonding requirements for leasing, development, and production; and revises some operating requirements." *Id.* Generally, the Rule "will enhance the BLM's administration of oil and gas-related activities on America's public lands[,]" and ultimately, the Rule endeavors to "ensur[e] proper stewardship of public lands and resources." *Id.*

Petitioners[1] seek review and vacatur of the Rule under the Administrative Procedure Act. ECF No. 1 ¶ 50; *see* Administrative Procedure Act, 5 U.S.C. §§ 701–06; *see also* U.S.D.C.L.R. 83.6. Specifically, Petitioners argue that the Rule violates the BLM's duties under the Federal Land Policy and Management Act ("FLPMA"). ECF No. 1 ¶¶ 27–42.

---

[1] Petitioners include the following: Western Energy Alliance, Independent Petroleum Association of New Mexico, New Mexico Oil & Gas Association, North Dakota Petroleum Council, Petroleum Association of Wyoming, and Utah Petroleum Association.

2

Petitioners also argue that Federal Respondents failed to conduct the requisite National Environmental Policy Act ("NEPA") analysis before issuing the Rule. *Id.* ¶¶ 43–50.

The Conservation Groups oppose vacatur and contend that the relief sought by Petitioners "would keep severely outdated federal oil and gas bonding and leasing regulations in place, rob the federal government (and by extension American Taxpayers) of revenue, and perpetuate financial and environmental burdens on public lands that should rightfully be borne by industry." ECF No. 31 at 2. Further, they argue that vacating the Rule would inhibit the "BLM's ability to mitigate, minimize, or avoid adverse impacts of oil and gas activity on federal public lands as required by FLPMA." *Id.* And consequently, vacatur would "impair [the] Conservation Groups' ability to advance their…interests in protecting and restoring public lands." *Id.* Based on these concerns, the Conservation Groups seek to intervene as respondent-intervenors as a matter of right under Federal Rule of Civil Procedure 24(a)(2). *Id.*

## LEGAL STANDARD & ORDER

When a nonparty seeks to intervene as of right, they must establish the following: "(1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties." *Kane County, Utah v. United States*, 928 F.3d 877, 889 (10th Cir. 2019) [hereinafter *Kane Cty*] (citing *Western Energy Alliance v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017)); *see* FED. R. CIV. P. 24(a)(2). Historically, the Tenth Circuit has advocated a liberal approach to intervention. *E.g.*, *Zinke*, 877 F.3d at 1164.

## I.  Timeliness

Timeliness is determined "in light of all the circumstances." *Okla. ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1232 (10th Cir. 2010) (citation omitted). But there are three non-exhaustive factors that guide this determination: "(1) the length of time since the movants knew of their interests in the case; (2) prejudice to the existing parties; and (3) prejudice to the movant." *Id.* (quoting *Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416, 1418 (10th Cir. 1984) (internal quotation marks and brackets omitted)).

The Conservation Groups provide the following timeline of the case thus far:

> Petitioners filed their complaint on May 15, 2024, but did not return service until August 29, 2024. ECF No. 16, 17. Accordingly, counsel for Federal Respondents did not enter an appearance until August 30, 2024. ECF No. 18. That same day, Federal Respondents filed a Motion for Extension of Time to File the Administrative Record, ECF No. 20, and on September 3, the Court granted that motion and set a deadline of September 16, 2024 to lodge the administrative record. ECF No. 22. On September 10, Federal Defendants lodged the administrative record. ECF No. 24. On September 25, Petitioners moved to extend the existing schedule and agreed to contemporaneous filing of any record motion and their opening merits brief. ECF No. 26. The Court granted Petitioners' motion, with the result that Petitioner's opening brief, along with any records motion, is due November 8, 2024. ECF No. 27.

ECF No. 31 at 3–4.

Looking at this timeline, the Court finds that the length of time since the movants knew of their interest in the case before filing the instant motion was a relatively short period.[2] Additionally, as the Conservation Groups point out, their intervention would not

---

[2] It should be noted that the first non-exhaustive timeliness factor—i.e., the length of time since the movants knew of their interests in the case—is typically measured "from when the movant was on notice that its interest may not be protected by a party already in the case." *Okla. ex rel. Edmondson v. Tyson Foods, Inc*, 619 F.3d 1223, 1232 (10th Cir. 2010) (citations omitted).

require alteration of the existing schedule, and "intervention at this early stage, within four weeks after the administrative record was lodged and before any briefing,…would not prejudice any…party." *Id.* at 4. This perceived lack of prejudice is bolstered by the fact that neither party objects to the Conservation Groups' intervention. ECF No. 31 at 5; ECF No. 33 at 1–2. Seeing as this case is in its relative infancy and neither party nor the prospective intervenors would be prejudiced, the Court finds the Conservation Groups' *Motion* meets the timeliness requirement. *See Sanguine*, 736 F.2d at 1418.

## II. The Interest Requirements

For a movant to satisfy the interest requirements they "must have an interest that could be adversely affected by the litigation." *San Juan Cty. v. United States*, 503 F.3d 1163, 1199 (10th Cir. 2007). The Tenth Circuit has instructed trial courts to apply "practical judgment" in determining "whether the strength of the interest and the potential risk of injury to that interest justif[ies] intervention." *Id.*

An interest must be "direct, substantial, and legally protectable." *Coalition of Arizona/New Mexico Counties v. Dep't of Interior*, 100 F.3d 837, 840 (10th Cir. 1996) [hereinafter *Coalition*] (citations omitted). And determining whether there is a potential impairment of that interest presents only a "minimal burden" that can be satisfied by demonstrating impairment of the would-be intervenor's legal interest is possible if intervention is denied. *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1199 (10th Cir. 2010); *see Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1253 (10th Cir. 2001) [hereinafter *UAC*].

### A. Interest in the Subject of the Lawsuit

In this case, the Court finds that the Conservation Groups have demonstrated a protectable interest in this case's subject matter. To start, many of their members "live near public lands managed by BLM, and regularly travel through or near these lands for work, recreation, or routine activities…." ECF No. 31 at 5. They argue that "growing numbers of unsightly, derelict abandoned wells and associated infrastructure mar these treasured landscapes, compounding the ongoing impacts from active wells and threatening members' health and safety, evoking concerns for wildlife, diminishing members' use and enjoyment of public lands, and imposing tremendous financial liabilities on taxpayers." *Id.* at 6. Additionally, the "Conservation Groups and their members have also urged BLM, the Interior Department, and relevant state agencies to address a growing crisis of abandoned oil and gas wells and raise bonding requirements to better reflect the actual costs of well plugging, equipment decommissioning and land remediation—and have consistently advocated for plugging and cleanup of abandoned wells near where members live, work, and recreate." *Id.*

The Court finds the Conservation Groups' record of advocacy along with the environmental impacts their members face is sufficient to meet the direct, substantial, and legally protectable interest requirement. This finding is guided by the Tenth Circuit's decision in *Coalition*; in that case, the Court found that a "commercial wildlife photographer who had 'photographed and studied the [Mexican Spotted] Owl in the wild' and had been instrumental in the decision to list the Owl under the Endangered Species Act possessed a [direct, substantial, and] legal[ly cognizable] interest in defending against a

lawsuit to rescind that protection." *Kane Cty*, 928 F.3d at 891 (quoting *Coalition*, 100 F.3d at 841).

The Court finds the Conservation Groups' advocacy for the very Rule that Petitioners seek to vacate is analogous to the facts in *Coalition*.[3] Lending further support, is the Tenth Circuit's finding that "a prospective intervenor's environmental concern is a legally protectable interest." *Zinke*, 877 F.3d at 1165 (quoting *WildEarth Guardians*, 604 F.3d at 1198). Therefore, the Court finds that the Conservation Groups have a direct, substantial, and legally protectable interest in this case.

### B. Potential Impairment of the Interest

Next, the Court turns to whether an adverse ruling in this case would serve as an impairment to the Conservation Groups' interests. *See* FED. R. CIV. P. 42(a)(2). As noted above, this is a "minimal burden" and can be met upon a showing "that impairment of [the would-be intervenor's] substantial legal interest is possible if intervention is denied." *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009) (quoting *UAC*, 255 F.3d at 1253 (internal quotation marks omitted)). And generally, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *San Juan Cty*, 503 F.3d at 1189 (quoting FED. R. CIV. P. 24 advisory committee's notes to 1966 amendment).

As the Conservation Groups point out, "[t]he relief sought by Petitioners would seriously impede Federal [Respondent]s' ability to address a growing abandoned well crisis

---

[3] *See* ECF No. 31 at 6–7 ("Conservation Groups not only submitted extensive comments in support of the Rule's bonding reforms, they also urged BLM to go further and require full-cost, per-well bonding, and to eliminate statewide and lease-wide 'blanket' bonds—measures BLM declined to adopt.").

and protect public lands for present and future generations. This, in turn, would cause significant harm to [the] Conservation Groups and their members." ECF No. 31 at 7. The Court generally agrees that this prospective impairment/impediment is sufficient. That is, if the Rule is vacated, the Conservation Groups and their members' interests may be substantially affected—both in terms of individual members' use and enjoyment of public lands and in terms of the Conservation Groups' environmental advocacy efforts. *See San Juan Cty*, 503 F.3d at 1189. Because there is a possibility that the movants' interests would be impaired if they are barred from intervening, the Court finds the impairment requirement is met.

## III.   Inadequate Representation

The final element is inadequate representation by the existing parties. This burden is "minimal" as well, and "it is enough to show that the representation 'may be' inadequate." *Nat. Res. Def. Council v. U.S. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978) (quoting *Trbovich v. United Mine Wkers.*, 404 U.S. 528, 538 n.10, 92 S. Ct. 630, 30 L. Ed. 2d 686 (1972)).[4] The Tenth Circuit has held that divergent interests may be enough to show inadequate representation, and in cases such as this, where the government is a party, the appellate court has "repeatedly recognized that it is on its face impossible for a government agency to carry the task of protecting the public's interests and the private interests of a prospective intervenor." *WildEarth Guardians*, 604 F.3d at 1200 (internal quotation marks and citations omitted).

---

[4] *See also WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009) (holding that the possibility of inadequate representation may be sufficient).

Here, the Court finds that the Conservation Groups satisfy the inadequate representation test. As they note, their "distinct interests in protecting public lands and the communities and ecosystems that depend on them are narrower than—and at times in conflict with—Federal Respondents' multifaceted land management duties." ECF No. 31 at 9. This divergence in interests is reflected in the Conservation Groups' comments and proposals urging the "BLM to pause, curtail or eliminate oil and gas leasing on federal public lands." *Id.* (citation omitted). And further, Conservation Groups fear that Federal Respondents could change their position or make concessions in this action—a fear heightened by the looming election. *Id.* Based on these considerations, the Court finds that the Conservation Groups have met the minimal burden showing the possibility that Federal Respondents' representation may be inadequate.

CONCLUSION

Based upon the preceding, this Court finds that the Conservation Groups have a right to intervene pursuant to Rule 24(a)(2). Therefore, the Conservation Groups' *Motion* (ECF No. 31) seeking to intervene in the above-captioned matter as respondent-intervenors is hereby **GRANTED**.

Dated this 23rd day of October, 2024.

Scott P. Klosterman
United States Magistrate Judge